## ALLEN v. CUBBISON.

No. 19873. Opinion Filed May 5, 1931.

Rehearing Denied June 30, 1931.

Cheek & McRill and John F. Butler, for plaintiff in error.

E. L. Smith and Brown Moore, for defendant in error.

RILEY, J. This is an appeal from a verdict and judgment obtained by defendant in error, Otha L. Cubbison, hereinafter referred to as plaintiff, for damages for personal injuries in an action against plaintiff in error, Howard W. Allen, doing business as the Allen Bus Lines, hereinafter referred to as defendant. The action grew out of a collision upon a public highway between an automobile in which plaintiff was riding and a truck being operated by defendant. The amended petition, upon which the cause was tried, alleged, in substance, that on the night of October 21, 1927, she was riding in an automobile along and over a paved highway between Manford and Drumright, Okla., and as the car in which she was riding proceeded on said highway it collided violently with a bus which was then being operated by defendant, his agents and servants, and that said collision was caused solely by the negligence of defendant; that as a result of such collision plaintiff was thrown violently against the dashboard and windshield of the car and "her head, teeth, neck, arms, back and legs and all of the bones, blood vessels, nerves, ligaments and muscles thereof were severely bruised, wrenched, fractured, and displaced; that she suffered a fracture of her right leg, causing same to be permanently weakened, deformed and stiff, that

her back and spinal column were severely wrenched, injured, and strained; that her jaw bone was fractured and her teeth loosened and displaced, causing a permanent deformity thereof; that she received a severe nervous shock and suffered great pain and mental anguish as the result of said injuries; that she was confined to a hospital for a long period of time following said injuries; that her ability for work and pleasure have been permanently injured; that before said accident she was strong and able to work, that she expended and will continue to expend large sums of money for medical, dental, and hospital treatments, all to her damage in the sum of $15,000." The allegations of negligence were:

"Plaintiff states that the collision and her injuries, as stated, were caused by the negligence of the defendant, its agents, servants, and employees in that the said bus of the defendant was stopped and permitted to stand near the center of said highway, which at said point was a concrete slab, and that it was dark at said time and place, and there were no lights or other warning signs placed upon the said bus at said time, and that the driver of said bus, although present, made no attempt to warn approaching automobiles of the presence of said bus; and that the defendant, its servants, agents and employees knew, or by the exercise of ordinary care should and could have known, that said bus left in said condition was dangerous and liable to cause injury and damage to any and all traffic upon said highway at said time, and that said acts and omissions were a violation of the rules of the road and the statutes made and provided."

Defendant demurred to the amended petition, and the demurrer being overruled, he answered by general denial and plea of contributory negligence.

Plaintiff replied by general denial.

The cause was tried to a jury, resulting in a verdict for plaintiff in the sum of $4,000. After motion for new trial was filed and overruled, judgment was entered upon the verdict. From said judgment and order overruling motion for new trial defendant appeals.

The assignments of error relied upon are presented upon four propositions: First, error in overruling demurrer to the amended petition; second, error in overruling defendant's demurrer to plaintiff's evidence; third, error in giving instructions Nos. 8 and 10, and refusing defendant's requested instruction No. 8; and, fourth, error in giving instruction No. 12.

The first and second propositions are presented together, and as the argument made and authorities cited are all directed to the second, the assignment presented under the first proposition may be treated as abandoned.

The second proposition involves two questions: (1) Did the evidence of plaintiff in chief establish a prima facie case? And (2) if so, did the evidence as a whole destroy the prima facie case so made?

If the evidence in chief offered by plaintiff did not support the allegation of her petition so as to warrant a verdict in her favor at the close thereof, it was error to overrule the demurrer thereto. This requires a review of the evidence of plaintiff in her case in chief. It shows in substance that on October 21, 1927, plaintiff, who then resided in Cushing, was in Tulsa on business; that while there she met a man named Reed, who roomed or boarded at the hotel in Cushing where plaintiff worked; he inquired of her if she intended to return to Cushing that evening and she informed him that she did. He then inquired how she was traveling. She stated to him that she intended to go on the bus, whereupon he invited her to ride with him as a guest in his automobile. She accepted the invitation and they left Tulsa for Cushing about 3:00 p. m. They stopped at Manford, where plaintiff visited her uncle for about an hour. They left Manford just before dark and drove through the little town of Crow, and having just rounded a left curve in the highway, and while driving in a southern direction at about 25 miles per hour, they suddenly came upon the bus operated by defendant's employee, standing upon the pavement to the right of the center so that the side of the bus next to the center of the pavement was about 12 to 18 inches to the right west of the center line of the pavement. There were no lights on the bus, and nothing other than the presence of the bus itself to warn the driver of the automobile. There was some evidence that the lights from other cars approaching, from the south blinded plaintiff. She testified that she saw the bus standing on the pavement, and warned the driver, but too late to avoid the collision; the car crashed into the bus throwing plaintiff against the dashboard and windshield. She testified that the lights on Reed's car were burning, but because of the curve in the road did not shine upon and reveal the bus until they were too close to stop or turn to one side. As a result of the collision the large bone of plaintiff's lower right limb was broken just below the knee, the knee-cap was displaced, and she received various other bruises and wounds.

The process of the bone of the lower jaw which holds the teeth was broken off on both sides. She was taken to the hospital, where she was treated for some two weeks, and from there to the hotel, where she was confined to her bed for about four weeks, after which she was compelled to use crutches for some two months. She was still under the care of the physician at the date of the trial. A dentist treated her and was able to, and did repair the process so that her teeth were saved, except one. It was something like a month before she could use her teeth.

Our attention is called to the provision of section 10164, C. O. S. 1921, as amended by section 1, of chapter 76, S. L. 1927, and particularly to rule 10, which provides:

"Be it further provided that when a motor vehicle is brought to a stop on a hard-surfaced highway, the left side of the motor vehicle must be to the right of the center of said highway at least three feet."

Defendant in his brief says:

"If the defendant violated that law, then negligence was proven. Otherwise not."

The evidence of plaintiff, as stated above, shows the bus to have been stopped on the pavement with the left side thereof much less than three feet to the right of the center line.

Defendant in his brief also says:

"By analogy, we say that where it appears from testimony that the car (bus) of defendant, in custody of defendant's agent, is found under such circumstances or at such place as to create the presumption that it was placed there by the defendant, a presumption may arise that the defendant is legally chargeable and responsible therefor. shifting the burden to defendant; but that if explained by defendant proving the condition not created by him or his driver, then the question becomes one of law."

We agree with the defendant that when a state of facts is thus shown to exist the burden shifts to defendant to show, if he can, that his act in thus stopping the motor vehicle was not negligence. This disposes of the question of the demurrer to the evidence. When it becomes necessary for a defendant to introduce evidence in opposition to that offered by plaintiff in chief it is not error to overrule a demurrer to plaintiff's evidence.

The second question requires an examination of the evidence as a whole. If the uncontradicted evidence of defendant was such as to overcome the case made by the plaintiff, and leave the evidence as a whole in such state that the court, in the exercise of a sound judicial discretion, would have been compelled to set aside the verdict for plaintiff, then it was error not to direct a verdict for defendant, otherwise it was not error.

Defendant contends that the uncontradicted evidence of defendant proved that the bus had "gone dead" suddenly, while being driven on the highway, and that the driver could not, and had no opportunity to drive off the road before it stopped, and therefore there was no primary negligence shown. In other words, that because the bus stopped suddenly without sufficient warning to the driver so as to enable him to move the same so as to place the left side thereof at least three feet from the center of the highway, it follows that no primary negligence was shown, and that, therefore, the jury should have been instructed to return a verdict for defendant. This might be true if the evidence had further shown that the driver of the bus could not by any means reasonably within hand moved the truck off of the pavement, or at least far enough to make it reasonably safe for others using the highway, and there were no other allegations or proof of negligence. There was evidence tending to show that the highway at the point where the truck was standing was on an incline or grade such as a truck could easily have been rolled back and off the pavement. However, the evidence was in sharp conflict as to the width of the shoulder along the side of the pavement, some of the witnesses testifying that there was but 2½ to 3 feet and others testifying that there was as much as 6 feet available space.

However, the stopping of the truck on the pavement in violation of rule 10 was not the only allegation of negligence. The failure to display a light on the truck under the circumstances, though not a direct violation of law, as well as failure to give any other warning, we think was sufficient allegation of negligence which, supported by the evidence, as they were, was sufficient when taken into consideration with the alleged position of the truck to leave a question for the jury on the evidence as a whole.

Defendant cites, and to some extent relies upon, Smith v. Clark et al., 125 Okla. 18, 256 Pac. 36. In that case it was held:

"A driver of an automobile on a public road, upon approaching another automobile from the rear, must look out for the man ahead, and must have his machine well in hand to avoid injuring the car ahead, so long as the man ahead is driving in accordance with his rights."

The facts in that case were entirely differ-

ent from those in the instant case. There two automobiles were traveling along the highway in the same direction. The one in the rear attempted to pass the other just as the front car was about to, and did turn to the left into an intersecting highway, without giving a signal or other warning of his intention so to do. The record did not indicate that the driver of the front car heard the signal given by the driver of the other car, or knew of his intention to pass. It was held that under such evidence it was not negligence to turn to the left in order to get upon the intersecting highway.

Several Kansas cases are also cited, which hold, in effect, that it is negligence as a matter of law to drive an automobile along a highway on a dark night at such speed that it cannot be stopped or turned aside within the distance that objects can be seen ahead of it, and that when this is not done and the automobile collides with another standing upon an improved highway the driver thereof is guilty of such contributory negligence as to preclude him from damages.

The rules as to contributory negligence in Kansas are not applicable here, for the reason that contributory negligence, under our Constitution (art. 23, sec. 6), when disputed as to facts, is always a question of fact for the jury and the court cannot in any case hold plaintiff guilty of contributory negl'gence as a matter of law.

There was no error in refusing to direct a verdict for defendant.

As to the instructions complained of: Instruction No. 8, while apparently limiting the question of primary negligence "to the stopping of said bus on the highway at the time and place," is in that respect more favorable to the defendant than to plaintiff. In all other respects we think it was a fair statement of the law. It told the jury that if they found defendant guilty of negligence in this respect, and that if such negligence concurred with the negligence of the driver of a car in causing the collision, and the jury should find that plaintiff herself committed no negligence, that the negligence of the driver of the car concurring with the negligence of the driver of the bus would not bar plaintiff from recovery, unless plaintiff herself was not, under all the circumstances, exercising ordinary care for her own safety. We think the instruction fairly stated the law with reference to imputed negligence where the plaintiff was, as here, riding in a car as an invited guest.

By instruction No. 10, the jury was told that if the stopping of the bus was brought about by the stalling of the engine or motor

thereof and the driver did not know of the defective condition of the motor, or the defective condition thereof could not have been foreseen by an ordinarily prudent person under similar circumstances and conditions, then, under the circumstances, the stopping of the bus would not be negligence. This was a fair presentation of the law as to the cause of the stopping of the bus, and was fair to defendant.

It is urged that there was no evidence from which it might be inferred that the driver of the bus should be put on notice that his engine might stall. In this he is mistaken. The evidence shows that the motor of the bus stalled on two occasions that afternoon or evening on the same road and that the driver knew this.

The instruction went further and told the jury in effect that if the plaintiff suffered injury thereby (that is, by the stopping of the bus on the highway) by reason of the failure of duty of the driver of the car in which plaintiff was riding as pointed out in instruction 9, plaintiff could not recover. This part of the instruction must be read in connection with instruction No. 9, which was:

"You are instructed that under the law it is the duty of the driver of an automobile in overtaking and attempting to pass another to keep to the left of the center of the road, and upon approaching a car from the rear to look out for a car ahead, and to have his car well in hand to avoid injury. And if the driver of the automobile failed in any way to have his car under control, or failed to observe with a reasonable degree of safety, or use ordinary care, and the plaintiff could have prevented him, by the use of ordinary care, from committing such act of negligence, and failed to do so, then, under such circumstances, your verdict in this case should be for the defendant."

When the two instructions are read together, it is apparent that there is no error therein.

Refusal to give defendant's requested instruction 8 is complained of. This alleged error is not available to defendant under the state of the record. Exceptions to the failure to give the requested instruction were not properly saved. The record with reference thereto shows: "Refused and excepted to by defendant. Judge." The exception was not signed by the judge as required by section 542, C. O. S. 1921. The question, therefore, is not properly here for review. Whitehead v. Cook, 100 Okla. 282, 229 Pac. 254; Hornstein v. Yarrington, 110 Okla. 175, 237 Pac. 73; Scott v. Scott, 129 Okla. 176, 264 Pac. 159.

The fourth proposition is that the court erred in its instruction as to the measure of damages. It is contended that the instruction did not properly set out the elements of damages. The instruction is not as complete perhaps as it should have been, but the jury was told that if a verdict was found for plaintiff, then in assessing the damages "with reference to the pecuniary losses sustained by the plaintiff and in determining this, you may take into consideration her injuries, pain and suffering, and pecuniary loss, so far as these matters have been shown by the evidence. Damages allowed by the jury must in all cases be reasonable and not exceed the loss sustained and in no event should you allow any sum in excess of the amount sued for in the petition."

The defendant did not point out any specific objection to the instruction given, and did not present his theory of a proper instruction on the measure of damages. In such case, where it does not appear that the damages awarded are excessive (and it does not so appear in this case), the rule in this state is that the cause will not be reversed for mere inaccuracy in the instruction on the measure of damages. Ft. Smith & Western Ry. Co. v. Moore, 66 Okla. 322, 169 Pac. 904; Whitworth v. Riley, 132 Okla. 72, 269 Pac. 350.

No reversible error appearing in the record, the judgment is affirmed.

HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.

LESTER, C. J., and CLARK, V. C. J., absent, not participating.