### RUCKER v. BURKE et ux.

No. 27971. Oct. 11, 1938.

Rehearing Denied Nov. 15, 1938.

Roger L. Stephens, Arthur H. Dolman, and Ted Foster, for plaintiff in error.

Clay M. Roper, for defendants in error.

BAYLESS, V. C. J. James E. Burke and wife, as the owners of the real estate involved, brought an action in the district court of Oklahoma county against T. B. Rucker et al. in the nature of slander of title. They obtained judgment against Rucker, and he appeals.

In 1919 Ball obtained a tax deed to the real estate, and in 1926 contracted to sell it to Burke. In 1929 Burke was entitled to receive and got a deed to the property. In these years the improvements greatly enhanced the value of the property. Late in 1928 oil was discovered in the section of Oklahoma City where this property lay, and thereafter, the exact date not being shown, Burke entered into a written contract to sell the property. Thereafter, Rucker discovered the basis of Burke's grantor's title, whereupon Rucker procured, from the party who owned it at the time of the tax sale, a quitclaim deed and claimed ownership based thereon. Burke, thereupon, brought suit to quiet title and was successful. Rucker appealed, and this court sustained the lower court's judgment. Rucker v. Burke, 170 Okla. 243, 39 P.2d 6. In the meantime the deal for Burke's property fell through and he then filed this action.

The most serious question relates to the issue of liability. The utterance of a mere falsehood, however malicious, is not alone sufficient to sustain an action for slander of title to property; special damages are the gist of the action and without them the action cannot be maintained. Plaintiff must have sustained a pecuniary loss as the direct and natural result of the publication of the words. 37 C. J. 132, sec. 600, and 17 R. C. L. 459, sec. 222. See Ward v. Mid-West, etc., Co., 97 Okla. 252, 223 P. 170.

The law, likewise, is that there is no liability if the slander causes a breach of an enforceable contract. The remedy is for the owner to enforce the contract. 37 C. J. 132, sec. 601, and supplements and cases cited under note 91.

The law, likewise, is that where a purchaser under an enforceable contract refuses to purchase because of the slander, the vendor destroys his cause of action for the slander if he voluntarily releases the purchaser or acquiesces in his refusal to complete the deal. Fry v. Title, etc., Co., 187 Cal. 168, 201 P. 115, and cases cited therein. This rule naturally follows the one before. If there is an enforceable contract, the slander is no excuse for the purchaser to renege.

As stated before, we do not have the plaintiffs' contract before us, we do not know its date, its terms, its respective obligations, nor many other essentials from which is to be determined its enforceability.

The evidence of the plaintiffs does not raise any inference in their favor, and in its apparent meaning virtually raises a strong inference against them. The testimony of James E. Burke makes it appear that he believed the deal did not go through because of the cloud of the quitclaim deed; his testimony, as well as that of his attorney, was vague on this point. Objections were sustained to questions asked him, and to his answers thereto, by which it was hoped to show that this was the reason the deal fell through. No effort was made by plaintiffs to pursue this point further. They seem to have acquiesced in the trial court's ruling. From their evidence we are led to believe that an abstract was furnished, but if there was a formal written opinion rejecting the title evidenced thereby, neither the lawyer nor client knew of it with certainty. At another place, Burke testified:

"A. We drew up a written contract and until they couldn't get the money through the bank, why we tore it up around that time."

The plaintiffs introduced evidence relating to an attempted sale of the property to another party, and say this deal fell through because of the presence of the quitclaim deed on record. No date is shown as to when this transaction was attempted, nor whether the plaintiffs themselves were in a position to sell, considering they had a contract with Trumbly. If the contract was enforceable between the plaintiffs and Trumbly, and was yet in effect, plaintiffs could not sell to anyone else, for both the quitclaim deed and the contract would be in the way.

We are impressed with the merits of the plaintiffs' claim as made out in all other respects, but there exists this gap in the evidence relating to liability. There is so much left out of the evidence that the jury had to resort to conjecture in determining whether Rucker's act actually prevented a sale of the property at a time when the

plaintiffs could have sold. Until this is shown by positive evidence there can be no recovery. A discussion of the other propositions is unnecessary.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

OSBORN, C. J., and RILEY, WELCH, PHELPS, HURST, and DAVISON, JJ., concur. CORN and GIBSON, JJ., absent.