J. T. McKINNEY, Sr., Plaintiff in Error,

v.

Leon PARKER and Janna Lou Parker,
Defendants in Error.

No. 38842.

Supreme Court of Oklahoma.

Oct. 11, 1960.

Vural L. Gilley, Tulsa, for plaintiff in error.

Covington, Donovan & Gibbon, Tulsa, for defendants in error.

BLACKBIRD, Justice.

This appeal involves an action for damages for personal injuries resulting from a "head-on" collision between a 1951 Model Ford Sedan, and a 1954 Model Buick Sedan, on a roadway that is a part, or an extension, of Tulsa's South Lewis Avenue, at a point south of said city's 81st Street, in the direction of Jenks, Oklahoma, on Sunday

afternoon, June 23, 1957. Plaintiff in error, who was plaintiff in the action, is the father of the 16-year-old driver of the Ford, James Thomas, or J. T. McKinney, Jr. Defendants in error are young Janna Lou Parker, who was driving the Buick, and her father. Apparently, all parties are residents of Jenks. They will hereinafter be referred to by their trial court designations.

At the time of the accident, the Buick was traveling south on the west lane of this concrete road, referred to as Lewis, or South Lewis, Avenue, while the Ford was traveling north toward Tulsa, on the east side of said road, meeting the Buick. The two cars collided at, or adjacent to, a place on the road where rain, earlier in the day, and/or during the night before, had left a pool of water partially inundating it. The impact of the collision caused both the plaintiff's son, and another Jenks boy riding in the Ford's front seat with him, to fall, or be thrown, out of said auto onto the road, and rendered unconscious. After the accident, the Ford came to a stop facing west, or southwesterly, on the soggy right-of-way east of the road's concrete slab; while the Buick traveled a short distance farther south, and stopped in a ditch along the west side of the road. Apparently, the aforementioned pool of water extending out over part of the highway, from its east side, was an important factor in the accident, though the evidence does not show conclusively or specifically just how this water may have caused, or contributed to, it. Afterward, both drivers, as well as the Ford's guest passenger, went, or were taken, to the hospital, where (among other things that occurred there) Janna Lou was interviewed by a police officer, apparently investigating the accident. The Ford's driver did not regain consciousness until several days later.

When plaintiff thereafter instituted this action, in October, 1957, his petition alleged, in addition to some of the essential facts above related (and others unnecessary to mention), that his son was driving his Ford at a safe, careful and prudent rate of speed, having due regard to the traffic, surface, and width of the road; but that the defendant's daughter, Janna Lou, was driving the Buick recklessly and at the "* * * fast, excessive and unsafe speed * * * of 60 M. P. H. * * *", without due regard for conditions on said highway, in violation of Tit. 47, O.S.1951 § 121.-3(a); and, while so doing, drove said Buick against, and into, the Ford. Plaintiff's petition further alleged, inter alia, that:

"* * * the defendants, and each of them, saw plaintiff's son in a position of peril at a time when they could have and should have brought the car under control and slowed down, stopped or driven same so as to avoid hitting the plaintiff's car and his son. This the defendants failed to do."

Defendants denied all of plaintiff's allegations, except those specifically admitted in their answer; and therein alleged that "* * * so far as they were concerned * * *", the accident was unavoidable; in substance, that the collision was plaintiff's son's fault, and would not have occurred, but for his failure to keep the Ford on its side of the center of the highway, instead of allowing it to come over to the Buick's side, directly into its path (in violation of Oklahoma Law), in addition to said driver's negligence in other named respects, such as failing to keep a proper lookout for his own safety.

When plaintiff filed a reply, the issues were joined, and the cause came to trial before a jury, plaintiff elected to base his attempted recovery on defendants' "primary negligence", after the trial court had sustained defendants' motion to require him to choose between proceeding upon that alleged theory and proceeding upon the alleged theory that defendants had the last clear chance to avoid the accident.

At the trial, plaintiff introduced no evidence to show how the collision occurred, or specifically what caused it. One of the witnesses, however, a Clint Shaver, who was apparently about 200 yards north of the scene of the accident, testified that he saw part of the water in the pool on the

road there, go up in the air, and "* * * one car began to swerve in * * *". Examination of this witness' testimony as a whole renders it probable that he was referring to plaintiff's car crossing the center line of the highway; and such a conclusion would accord with photographs of the damaged Ford and Buick introduced in evidence. These plainly show that it was the right, instead of the left, front corner of the northbound Ford that came into contact with the southbound Buick's left front corner. Shaver further testified that he "would call" the road "slick", and expressed ignorance as to how the cars collided, saying: "It looks to me like they just hit that water and that water just came up." When specifically interrogated as to whether he saw the two cars come together, Shaver stated: "Only thing we seen was the water." The evidence did not establish undisputedly or unequivocally how far the pool of water extended into the road's west driving lane, nor how deep it was there.

The Ford's driver testified that the last thing he remembers was his car's rounding, at a speed of "about 30 miles an hour", a curve approximately 1/10th of a mile before it reached (south of) the scene of the accident. As to his Ford's running into the pool of water about the time it met the defendant's Buick, plaintiff's son's testimony was as follows:

"Q. You don't remember anything about the water or anything like that at all? A. Well, if there was water there, I am sure *I saw it*.

"Q. But you don't remember it? A. No, I don't recall it.

"Q. In other words, the last thing you remember at all is back up the road? The last thing you remember is the following Wednesday you were in the hospital? A. Yes, sir." (Emphasis ours.)

It was shown by statements in the deposition of Janna Lou Parker that she knew, or should have known, of the existence of the hereinbefore described water on the road, because she had driven through it on her way toward Tulsa from Jenks earlier the same day. Her deposition was also to the effect that, when the accident occurred, she was driving the Buick "forty or forty-five" miles per hour, and that, where 81st Street crosses South Lewis, about a half, or a fourth, of a mile north of the scene of the accident, she had noticed the Ford coming north on Lewis toward her.

During the reading of Janna Lou's deposition, the trial court sustained defense counsel's objection to the introduction of the following portion of it, offered by plaintiff's counsel:

"Question: What did you tell the police officer when you saw him at the hospital with reference to the speed of the McKinney car?

"Answer: I told him I could not actually tell him but it did not seem like it was actually going very fast."

When asked if she applied the Buick's brakes before the collision, Janna Lou deposed: "I could not actually say that I did because it happened so fast and it was over in a second."

At the close of plaintiff's evidence, the trial court entered judgment sustaining a general demurrer interposed by defendants, and dismissing the action with prejudice. Thereafter, plaintiff's motion for a new trial was overruled, and he perfected the present appeal.

For reversal of said judgment, plaintiff argues, under his first proposition, that the evidence is sufficient to have taken this case to the jury under both of two theories, in substance, as follows:

(1) The evidence established a prima facie case of the Buick's being driven in violation of section 121.3(a), supra, which was negligence per se, citing Clark v. Hawkins, Okl., 321 P.2d 648; Roadway Express v. Baty, 189 Okl. 180, 114 P.2d 935, and Stout v. Rutherford, Okl., 341 P.2d 266;

(2) The evidence established that "defendant failed to take all the precautions which reasonable care required under the circumstances, to-wit: to slow her car and *not drive it* 40, 45, or 50 M. P. H., *into water*

six inches òr more deep, which she knew was on the highway, at a time when another car was approaching and *entering the water*," citing White v. Rukes, 56 Okl. 476, 155 P. 1184. (Emphasis ours.)

With reference to the first of the above-described theories, plaintiff's counsel contends that "Janna Lou Parker could properly be found negligent in operating her automobile immediately prior to the accident", because of the fact that, though she knew of the pool, or ribbon, of water on the road at the scene of the accident, from having driven north through it earlier the same day, she, instead of using her brakes and slowing, or stopping, the Buick as it neared the water—with plaintiff's Ford approaching it from the opposite direction—drove right up to it going (by her own admission) "forty or forty-five" miles per hour. In stating such contention, counsel emphasizes testimony to the effect that the pool, or stream, of water extended clear across the highway; and, he cites Janna Lou's testimony as showing that "her car was somewheres about the center lane at the time of the impact * * *". This statement by counsel refers to the following excerpt from Miss Parker's deposition:

"Question: Where was your car at the moment of the impact with reference to the center line?

"Answer: Center line? Somewheres about * * .*."

■ The principal weakness in the evidence is that it fails to show sufficient facts concerning the accident (including the relative positions of the two cars as they approached its scene from opposite directions) to enable a jury to determine which of the two drivers was at fault. It does not show (as plaintiff's above-quoted "theory (2)" represents) that plaintiff's Ford was *entering* the water, as defendants' Buick approached it, or that the water was as much as 6 inches deep. From all that the record shows, the Ford's driver, plaintiff's young son, could have seen, or known about, the water over the highway, long enough before reaching it, to have avoided the col-

lision, just as plaintiff's counsel infers Janna Lou could have; and, as hereinbefore mentioned, the evidence does not establish that her car was on the wrong side of the road when the two cars collided. On the contrary, the damaged parts of the two cars (as portrayed by the photographs introduced in evidence) indicate that it was probably plaintiff's car that swerved into the wrong lane. Disregarding the presence of the water over the highway, there seems to be nothing about Janna Lou's driving, as she approached the scene of the accident, to constitute a violation of any statute or rule of the road; and we have failed to find in the cases cited by plaintiff any demonstration to the contrary. For all that the record shows concerning the respective positions of the two cars immediately previous to the accident, Miss Parker may have been justified in believing that her car would travel past the pool, or stream, of water, long enough before plaintiff's car reached it, to obviate any probability of danger from that source. We have carefully examined all of the evidence, and adjudge it (as the trial court must have) insufficient to establish negligent driving on the part of Janna Lou as the proximate cause of the collision. Accordingly, the sustaining of defendants' demurrer was not error.

■ In view of the foregoing determination, the trial court's hereinbefore described ruling on defendants' motion to require plaintiff to elect as to which of his two alleged theories of defendants' negligence he would attempt to prove can only be regarded as harmless error.

■ Plaintiff also contends that the trial court committed error in sustaining defendants' objection to the admission into evidence of the hereinbefore quoted part of Janna Lou's deposition, wherein she related what she told the policeman, at the hospital after the accident, concerning plaintiff's car's speed. Assuming, without deciding, that this ruling was prejudicial (rather than being harmless, because the evidence was cumulative of J. T. McKinney, Jr.'s previous testimony of the car's low

speed), we find no record of any objection having been made by plaintiff to said ruling. In Colorado Interstate Gas Co. v. Lorenz, Okl., 330 P.2d 583, we held:

"This court will not consider alleged errors of the trial court as to admission or rejection of testimony unless such alleged errors appear in the record of the case, and objections were made thereto in the trial court."

In accord with the foregoing, the error now complained of is not before this court for review.

As we have found no ground for reversal of the trial court's judgment in any of the arguments presented by plaintiff, said judgment is hereby affirmed.